IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LISA CRITTENTON-CATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV857 |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Lisa Crittenton-Cates, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security[1] denying her claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB and a POD in April of 2011 alleging a disability onset date of November 15, 2007. (Tr. 228-31.)[2] The application was denied initially and

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 6.)

1

upon reconsideration. (*Id.* at 65-93.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and at the March 11, 2013 hearing were Plaintiff and her attorney. (*Id.* at 27-41.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 98-110.) On October 18, 2013, the Appeals Council granted Plaintiff's request for review and remanded the matter to the ALJ. (*Id.* at 117-118.) A different ALJ held a new hearing on February 27, 2014, at which Plaintiff, her attorney, and a vocational expert ("VE") were present. (*Id.* at 42-63.) Plaintiff also amended her onset date to March 31, 2011. (*Id.* at 14, 46.) The ALJ again determined that Plaintiff was not disabled. (*Id.* at 14-26.) On August 15, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step[3] sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ reached the fifth step, at which point he determined that Plaintiff was not disabled from March 31, 2011, the amended alleged onset date, through December 31, 2012, the date last insured. (Tr. 26.)

More specifically, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity during the relevant period. (*Id.* at 16.) The ALJ next found in step two that Plaintiff had the following severe impairments: rheumatoid arthritis, fibromyalgia, leg edema, nerve damage in legs, bulging disc in neck, diabetes mellitus, pelvic enthesopathy, recurrent rash, and depressive disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 17.)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the ability to perform light work and that

> she was capable of lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently, could stand and walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday. The claimant could not climb

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

> ladders, ropes, or scaffolds, and could only occasionally climb stairs. She did not require an assistive device for balancing or walking. The claimant could do work involving only three to four step operations in a non-quota production environment. Finally, she could have only frequent contact with the public.

(Tr. 19.) At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. (*Id.* at 24.) At step five, the ALJ concluded that there were jobs in the national economy which she could perform. (*Id.* at 25-26.)

## IV. ANALYSIS

Plaintiff asks this Court to reverse the decision of the Commissioner, and in support of her request, she makes several arguments. First, Plaintiff contends that the ALJ erred in evaluating and weighing various medical opinions. (Docket Entry 9 at 4.) Second, Plaintiff asserts that the ALJ failed to account for her moderate limitations in concentration, persistence, and pace ("CPP"). (*Id.* at 9-10.) Third, Plaintiff alleges the ALJ erred in assessing her RFC. (*Id.* at 10-11.) Lastly, Plaintiff contends that the ALJ erred in his credibility analysis. (*Id.* at 11.) For the following reasons, these objections lack merit.

### 1. The ALJ properly evaluated the opinions of the medical care providers.

Plaintiff first contends that the ALJ erred in evaluating the medical opinions of (1) rheumatologist Dr. Amanda Nelson, M.D., (2) primary care physician Dr. Daniel Crummett, M.D., and (3) consulting examiner Dr. Constant Masere, M.D. (*Id.* at 4-9.)

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c)(2). The rule also recognizes, however, that not all treating sources or treating

source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

### Dr. Nelson

Dr. Nelson, Plaintiff's rheumatologist, concluded on February 28, 2013 in a pre-printed form, that because of pain and fatigue Plaintiff suffered from the occasional inability to concentrate on even simple, routine work tasks, and that because of her impairments or treatment Plaintiff would likely miss work three days per month. (Tr. 645, 644-646.) Dr. Nelson also initialed a check list form on March 13, 2013 listing some of the evidence from the record and indicating that she relied on this evidence in rendering her February 28 opinion. (Tr. 647.)

The ALJ specifically considered this opinion and gave it "little weight." (*Id.* at 23.) In support, the ALJ discussed Dr. Nelson's opinion, stating that:

> [w]hile Dr. Nelson is a treating source, she wrote her opinion on a form, and did not provide detailed reasoning regarding the claimant's specific limitations. . . . Dr. Nelson based her opinion on the claimant's allegations --she stated that the claimant "reports fatigue, which is a common complaint" with

5

> fibromyalgia (Exhibit 19F, pg. 1). While Dr. Nelson stated that the claimant experienced chronic pain due to fibromyalgia, she also reported that the claimant's primary care provider would "be better able to comment on her pain symptoms" (Exhibit 19F, pg. 2). The undersigned has considered Dr. Nelson's statements that x-rays taken in November 2013 revealed an increase in the size of entheosophytes in her pelvis and feet, but notes that this increase took place after the date last insured, and was only mild during the relevant period (Exhibit 25F).

(*Id.*)

The ALJ's decision to afford Dr. Nelson's opinion "little weight" is supported by substantial evidence. First, Dr. Nelson's opinion, described above, was rendered on pre-printed forms in a conclusory fashion, providing little explanation for her opinions. *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

Second, as the ALJ correctly noted, Dr. Nelson relied on Plaintiff's own self-reporting. (*Id.* at 23.) 20 C.F.R. § 404.1529(a) (claimant's allegations alone are insufficient to establish disability). The ALJ also correctly pointed out that Dr. Nelson's medical opinion tends to diminish its own credibility by suggesting that Dr. Nelson was not particularly well-positioned to evaluate Plaintiff's pain symptoms and by instead deferring to her primary care provider.[4]

---

[4] In her Reply, citing SSR 12–2p, 2012 WL 3104869 (July 25, 2012), Petitioner contends that the ALJ materially erred by relying on Plaintiff's own self-reporting of fibromyalgia-related symptoms as a reason for partially discounting Dr. Nelson's opinion. (Docket Entry 14 at 4-5.) Assuming

6

Third, the ALJ accurately points out elsewhere in the decision that Plaintiff had no limitations in daily activities—a finding Plaintiff has not disputed—and performed a range of daily activities, including good personal grooming and hygiene, light housework, some cooking, and some laundry, going to the grocery store and Wal Mart, and some driving. (Tr. 17-18 *referencing* 54, 564-66; *see also* Tr. 573 ("Her typical daily activities consist of resting, watching TV, taking walks, riding her bike, and doing things around the house.") *See, e.g., Coleman v. Colvin*, No. 1:15CV751, 2016 WL 4223583, at *7 (M.D.N.C. Aug. 9, 2016) (unpublished), *report and recommendation adopted*, 2016 WL 5372817 (M.D.N.C. Sept. 26, 2016) (unpublished). Likewise, the ALJ also correctly pointed out that upon examination, Plaintiff's memory was found to be good, her abstract thinking was intact, that she was alert and oriented, and that she could maintain focus and concentration throughout an interview. *Id.* at *5-6. (Tr. 18, 467, 564, 567.) This evidence is inconsistent with Dr. Nelson's vague and generally unsupported conclusions that Plaintiff's ability to concentrate on even simple, routine work

---

*arguendo* there this was error, it is harmless. The ALJ's decision recites to a considerable amount of other substantial evidence that warrants attributing little weight to Dr. Nelson's opinion, all of which is set forth above. There was no material error here. *See, e.g., Myers v. Colvin*, No. 1:13CV898, 2015 WL 4366201, at *3-4 (M.D.N.C. July 16, 2015) (unpublished), *report and recommendation adopted*, No. 1:13CV898, 2015 WL 5178441 (M.D.N.C. Sept. 4, 2015) (unpublished); *Johnson v. Colvin*, No. 3:14-CV-00046, 2016 WL 1090667, at *12 (W.D. Va. Mar. 18, 2016) (unpublished); *Burger v. Colvin*, No. 7:14CV00190, 2015 WL 5347065, at *9 (W.D. Va. Sept. 14, 2015) (unpublished) ("Although objective findings cannot be the sole basis for a fibromyalgia decision and the Commissioner must consider subjective complaints and daily activities, the record still must show some symptoms or functional limitations that suggest disability; in this case, the longitudinal record—based primarily on Dr. Lemmer's treatment records—did not include this evidence and thus did not support a finding of disability. The ALJ did not make his decision based on one or two treatment records, but fairly reviewed all of the treatment records."); *Foley v. Comm'r, Soc. Sec.*, No. CIV. ELH–14–1014, 2015 WL 151374, at *3 (D.Md. Jan. 9, 2015) (unpublished); *Whitney v. Colvin*, No. CA 9:14-1166-TMC, 2015 WL 3969323, at *9 (D.S.C. June 30, 2015) (unpublished).

tasks was impaired.

Fourth, the ALJ noted that he considered and gave little weight to Dr. Nelson's February 6, 2014 statement that x-rays taken in November 2013—which was after the date last insured and therefore beyond the relevant period in question—revealed an increase in the size of enthesophytes in Plaintiff's pelvis and feet. (Tr. 23, 708.) The ALJ noted too that this condition had previously been mild in nature. (Id. at 23, 495-96.) Furthermore, the increase in the size of Plaintiff's enthesophytes after her insured status expired does not appear to have created any additional functional limitations because at recent examinations with Dr. Crummett, Plaintiff had a normal gait, normal strength and muscle tone, a negative monofilament test, grossly normal feet, and no edema. (Id. at 22, 669, 673, 703.)

Last, in this case, the ALJ considered the longitudinal record as it related to Plaintiff's impairments, including fibromyalgia, and, in turn, limited her to a restricted range of light work. The ALJ did not ignore Plaintiff's fibromyalgia but instead accounted for it in the RFC. Plaintiff's arguments—which essentially propose alternative ways to view and weigh the evidence—on this issue are not persuasive.[5] (Docket Entry 9 at 5-6; Docket Entry 14 at 1-6.) The fact that plaintiff disagrees with the ALJ's assessment of Dr. Nelson's conclusions does not render the decision improper. For all these reasons, the ALJ's decision to give little weight

---

[5] Plaintiff also contends that the Commissioner engaged in improper *post hoc* rationalization because she argues that Dr. Nelson "did not provide any reasoning," while the ALJ found that Dr. Nelson "did not provide detailed" reasoning. (Docket Entry 14 at 2.) That is a distinction without a meaningful difference in this case, because, in either event, Dr. Nelson's conclusions are not well supported. *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion).

to the medical opinions of Dr. Nelson is supported by substantial evidence. *See, e.g., Coleman*, 2016 WL 4223583, at *7.

### *Dr. Crummett*

Next, Plaintiff contends that the ALJ erred in attributing little weight to the medical opinion of Dr. Crummett, Plaintiff's primary care physician. (Docket Entry 9 at 6-7 *referencing* Tr. 23.) On February 26, 2013, Dr. Crummett checked boxes on a form indicating that Plaintiff could sit, stand, and/or walk less than two hours in a workday, needed to leave her workstation for five minutes every hour due to her symptoms, could only occasionally lift ten pounds, and would frequently be unable to perform simple, routine work tasks due to her symptoms, and would miss more than four days a month of work. (Tr. 587.) Dr. Crummett also initialed a check list form on March 19, 2013 listing some of the evidence from the record and indicating that he relied on this evidence for his February 26, 2013 opinion. (Tr. 647.)

The ALJ gave Dr. Crummett's medical opinions "little weight," stating:

> The undersigned gives little weight to the opinion Daniel Crummett, M.D., expressed on February 26, 2013. (Exhibit 15F). While Dr. Crummett is a treating source, his opinion was written on a check-off sheet, and did not contain reasoning to support the claimant's specific limitations (Exhibit 15F). Dr. Crummett furthermore appeared to base part of his opinion solely on the claimant's allegations – he wrote "patient reports" in the left margin, next to his assessments of the claimant's ability to sit, stand and walk, as well as his opinion that the claimant requires hourly breaks (Exhibit 15F, pg.1). Dr. Crummett also stated that he had not "received notes in over a year" (Exhibit 15F, pg.1). Likewise, Dr. Crummett's January 2014 opinion that the claimant was limited to sedentary work and could only rarely talk to members of the public about their accounts is given little weight as his own treatment notes do not show the claimant had any

> significant complaints or findings regarding concentration problems. Also, aside from subjective pain, the claimant had very little objective findings on examination and maintained a normal gait (Exhibit 24F).

(Tr. 23.)

The ALJ's decision to afford Dr. Crummett's opinions "little weight" is supported by substantial evidence for the same reasons and authorities that the ALJ pointed to in attributing little weight to Dr. Nelson's opinion. As the ALJ correctly pointed out, Dr. Crummett's Feb. 2013 medical opinion lacked meaningful explanation for its conclusions, was poorly supported, was based in part on Plaintiff's subjective complaints, and was written on a check-box form. (Tr. 23, 586-87, 647-48.) This alone is substantial evidence in support of the ALJ's analysis of Dr. Crummett's opinions.[6] Yet, beyond this, the ALJ also found that Dr. Crummett's statement that he had not "received notes [from Plaintiff's rheumatologist] in over a year," was evidence of his lack of knowledge of Plaintiff's limitations. (Tr. 23, 586.)

The ALJ also accurately observed that Dr. Crummett's treatment notes were inconsistent with his January 2014 medical opinion. For example, these notes did not show

---

[6] In her Reply, Plaintiff contends that the ALJ mishandled his evaluation of Plaintiff's fibromyalgia-related symptoms. (Docket Entry 14 at 6-7.) However, this argument fails for the same reason it failed as to Dr. Nelson. *See supra* footnote 4; *see also Johnson v. Colvin*, 2016 WL 1090667, at *12 ("Because the ALJ was required to consider more than just Johnson's fibromyalgia, I can find no fault with the ALJ's discussion of objective signs, imaging, and testing as they are certainly relevant to some of her other impairments. Furthermore, to the extent the ALJ erred by determining that the lack of objective signs and Johnson's conservative treatment undermined her credibility as to her fibromyalgia, that error is harmless because other evidence supports the ALJ's credibility determination as to that condition, and the longitudinal record does not support a finding that Johnson's fibromyalgia-related pain was disabling.").

the claimant had any significant[7] complaints regarding concentration problems, yet Dr. Crummett still opined that Plaintiff was limited to sedentary work and could only rarely talk to members of the public about their accounts, in part because of deficits in concentration. (Tr. 23, 707.) *See, e.g., Coleman*, 2016 WL 4223583, at *6. Dr. Crummett's opinion in this regard is also at odds with the remainder of the record. For example, Dr. Masere, the consultative physical examiner, specifically found that Plaintiff's memory and concentration were normal. (Tr. 574.) Dr. Malterer, the consultative psychological examiner, also reported that Plaintiff maintained concentration and focus throughout the evaluation. (Tr. 564.)

Nor did Dr. Crummett's treatment notes support his opinion that Plaintiff was limited to sedentary work or needed to change positions frequently due to pain. Rather, Dr. Crummett's treatment notes reflected that straight leg raising and monofilament testing were negative; Plaintiff's motor strength, reflexes, gait and coordination were normal; and her feet were grossly normal. (Tr. 23, 555, 557, 629, 638.) These notes also reflected that Plaintiff's pain was controlled by her medications. On September 28, 2012, Dr. Crummett noted that Plaintiff's "neck and back pain have been stable and well controlled on current regimen." (Tr. 629.) On January 18, 2013, a few weeks after the expiration of Plaintiff's insured status, Dr. Crummett again reported that Plaintiff's "neck and back pain seem to be stable," and she had normal muscle strength and tone, coordination, gait, and reflexes. (Tr. 637-38; *see also* Tr. 673

---

[7] It appears that Plaintiff only complained of deficits in concentration once to Dr. Crummett, in early May of 2012, and that even then her operational judgment was intact and Dr. Crummett considered her allegations questionable. (Tr. 616-17.)

11

"pain pattern appears to be stable and well controlled.") For these reasons, the ALJ did not err in according little weight to Dr. Crummett's opinion.[8]

### Dr. Masere

Plaintiff next asserts that the ALJ erred in assessing the opinion of Dr. Masere, a state agency consultative examiner. (Docket Entry 9 at 7-9 *referencing* Tr. 24, 571-77.) On June 18, 2011, Dr. Masere examined Plaintiff and opined that she had, in pertinent part, mild limitations with sitting; moderate limitations with standing and walking; and required the use of an assistive device for ambulation. (Tr. 577.) Dr. Masere further opined in pertinent part that Plaintiff had moderate limitations with lifting and carrying weight and could only occasionally bend, stoop, crouch, and squat. (*Id.*)

The ALJ assessed Dr. Masere's opinion as follows:

> The undersigned gives partial weight to the opinion of the consultative examiner, Constant Masere, M.D., expressed on June 18, 2011 (Exhibit 12F). The undersigned gives significant weight to Dr. Masere's conclusion that the claimant retains the capacity to occasionally bend, stoop, crouch and squat, because it is consistent with the medical record, including her own examination notes, which show that the claimant exhibited muscle strength at a 4 out of 5 level (Exhibit 12F, pgs. 5-6, pg. 8). The undersigned gives little weight to the opinion of Dr. Masere

---

[8] In her Reply, Plaintiff contends that the Commissioner's reliance on the evidence discussed in this paragraph is impermissible, *post-hoc* rationalization. (Docket Entry 14 at 7.) Plaintiff contends that this is so because "the tests to which Defendant refers are irrelevant in assessing fibromyalgia." (Docket Entry 14 at 7.) The fact that Dr. Crummett's opinion is at odds with his treatment notes and also inconsistent with the overall record strikes the Court as entirely relevant to determining whether the ALJ's decision is both legally correct and supported by substantial evidence. However, even assuming *arguendo* that these arguments are correct, any error is harmless. Plaintiff suffered from more than simply fibromyalgia. Consequently, this evidence is relevant in assessing Plaintiff's other severe impairments. And, beyond this, the ALJ gave many additional reasons which provide substantial evidence for discounting the weight attributed to Dr. Crummett's opinions.

>  to the extent it is inconsistent with the claimant's residual functional capacity because Dr. Masere only examined the claimant once, and did not have the benefit of the entire record.

(Tr. 24.)

Thus, the ALJ explained that he gave significant weight to Dr. Masere's conclusion that Plaintiff was able to occasionally bend, stoop, crouch, and squat, because it was consistent with the objective medical evidence, including Dr. Masere's examination finding that Plaintiff had 4 out of 5 muscle strength. (Tr. 24, 574-75.) The ALJ explained that he gave little weight to the remainder of Dr. Masere's opinion because she only examined Plaintiff on one occasion. (Tr. 24.) The ALJ further explained that Dr. Masere did not have the benefit of reviewing the entire record, which, by implication, contradicted the remainder of her opinion. (Tr. 24.)

The undersigned agrees with the Commissioner and the ALJ that those portions of the record unavailable to Dr. Masere provide substantial evidence for partially discounting the remainder Dr. Masere's one-time medical opinion. *See* 20 C.F.R. § 404.1527(c)(2)(ii) (stating that the more knowledge the treating source has about a claimant's impairments, the more weight the opinion will receive). For example, in contrast to Dr. Masere's findings (particularly a positive straight leg raising test and the use of a cane for ambulation) (Tr. 575, 577), Dr. Crummett, Plaintiff's primary care physician, consistently reported that straight leg raising and monofilament testing were negative (Tr. 555, 557, 629 638), motor strength, reflexes, gait and coordination without the use of an assistive device were normal and feet were grossly normal (*id.* at 23, 555, 557, 629, 638). Plaintiff's pain was also generally controlled by her medications. (*Id.* at 629, 637-38, 673.) Examinations in October 2012 and January 2013 were also negative

for arthralgias, muscle weakness, myalgias, and neck pain. (*Id.* at 21, 633, 637.) As the ALJ noted in discussing Dr. Crummett, Plaintiff had very little objective findings on examination and maintained a normal gait and, as the ALJ further noted, Plaintiff demonstrated no limitations in her activities of daily living. (Tr. 17-18, 23.)

Because Dr. Masere's opinions were based on a one-time examination, she did not have the benefit of reviewing Plaintiff's records, and because her findings were generally inconsistent with the findings of Plaintiff's long-term primary care physician, *Coleman*, 2016 WL 4223583, at *6, the ALJ reasonably found they were only entitled to partial weight. The ALJ's evaluation of Dr. Masere's opinion is susceptible to judicial review and supported by substantial evidence. Plaintiff's objection should be overruled.

2. **The ALJ sufficiently accounted for Plaintiff's limitations in CPP.**

Plaintiff next argues that the ALJ failed to properly address her moderate limitations in CPP. (Docket Entry 9 at 9-10.) For the following reasons, the Court disagrees.

On March 18, 2015, the United States Court of Appeals for the Fourth Circuit published its opinion in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. Specifically, the Fourth Circuit remanded in *Mascio* because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining CPP. *Mascio*, 780 F.3d at 637-38.

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, as mentioned earlier, the ALJ determined at step three that the claimant had moderate limitations in CPP. (Tr. 18.) In support, the ALJ's assessment in its entirety was:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant informed Dr. Hamby that her recent memory was poor, and that she experienced a decline in memory in the last three to four months (Exhibit 5F, pg 2). However, Dr. Hamby reported upon examination that the claimant's memory was good, that she exhibited no evidence of delusions, and her abstract thinking was intact (Exhibit 5F, pg. 4). Dr. Malterer subsequently indicated in June 17, 2011, that the claimant was alert and oriented, with average intelligence and intact memory, and that she maintained focus and concentration thoroughly the interview (Exhibit 11F, pg. 2, pg. 6). After considering the above evidence along with the claimant's allegations of chronic pain, the undersigned concludes that she is moderately impaired in concentration, persistence, and pace.

(*Id. referencing* Tr. 465, 467, 564, 564-68.)

15

"Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH–14–2214, 2015 WL 2395108, at *3 (D.Md. May 19, 2015) (unpublished).

Here, as set forth above, the ALJ explained, and supported with substantial evidence, his decision to only limit Plaintiff to three to four step operations in a non-quota environment. (Tr. 18 *referencing* Tr. 465, 467, 564-68, 574.) No additional explanation was necessary. Beyond this, and despite disagreement on the issue within Fourth Circuit district courts, the undersigned and other members of this Court have explained at considerable length elsewhere that a non-production quota is sufficient to account for moderate limitations in CPP, including the ability to stay on task. *See, e.g. Farrington v. Berryhill*, No. 1:15CV846, 2017 WL 807180, at *4-5 (M.D.N.C. Mar. 1, 2017) (unpublished), *recommendation adopted* 2017 WL 1155051 (M.D.N.C. Mar. 27, 2017) (unpublished); *Grant v. Colvin*, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016) (unpublished) ("[T]he non-production restriction adopted in this case sufficiently accounts for Plaintiff's moderate limitation in CPP."), *recommendation adopted* Slip Op. (M.D.N.C. Sept. 21, 2016) (unpublished). For these reasons, the ALJ's mental RFC finding accounted for Plaintiff's moderate limitations in CPP.

### 3. The RFC is supported by substantial evidence.

Plaintiff next contends that the RFC is not supported by substantial evidence. (Docket Entry 9 at 10-11.) The problem, however, is that in making this argument, Plaintiff cites

neither the record nor any case law in support and it fails for this reason alone. *See generally United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished).

Beyond this, Plaintiff's arguments—to the extent the Court can discern them—are duplicative of arguments already addressed and rejected above. More specifically, Plaintiff first contends that the ALJ erred in failing to account for her inability "to concentrate on simple, routine work tasks." (Docket Entry 9 at 10.) As explained, however, the ALJ's decision to limit Plaintiff to three to four step operations in a non-production environment is supported by substantial evidence. Plaintiff next seems to fault the ALJ for not finding that Plaintiff would miss three days of work a month due to her limitations. (*Id.*) This is perhaps a reference to Dr. Nelson's conclusion that Plaintiff would miss three days a month of work due to her medical impairments. However, also as explained above, the ALJ's decision to provide little weight to this conclusion was supported by substantial evidence for a number of reasons.

Plaintiff also contends that the ALJ failed to account for her moderate limitations with standing, walking, lifting, and carrying. (*Id.* at 11.) This is perhaps a reference to Dr. Masere's conclusions that Plaintiff would have limitations in these domains. However, as explained, the ALJ's assessment of Dr. Masere's medical opinions, and the ALJ's decision to limit Plaintiff to a reduced range of light work, were supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred by not concluding that Plaintiff had to make use of a cane. (*Id.*) This too would appear to be a reference to Dr. Masere, who concluded that Plaintiff needed a cane to ambulate. (Tr. 577.) However, as explained above,

the ALJ provided substantial evidence for rejecting those portions of Dr. Masere's opinion that contradicted the RFC, including Plaintiff's purported need for a cane. For all these reasons, this objection has no merit.

### 4. The ALJ's Credibility Analysis Is Supported by Substantial Evidence.

Last, Plaintiff argues that the ALJ materially erred in his credibility analysis. (Docket Entry 9 at 11.) For the following reasons, this argument lacks merit.

First, as with Plaintiff's prior argument, this one is also conclusory and fails for that reason alone. *See generally Zannino*, 895 F.2d at 17; *Hughes v. B/E Aerospace, Inc.*, 2014 WL 906220, at *1 n.1. Second, the argument has no merit. *Craig v. Chater* provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 20 C.F.R. § 404.1529(b)).

If the ALJ determines that such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-96. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them insofar as they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, 20 C.F.R. § 404.1529(c)(3), and heard

the claimant's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that he had carefully considered the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 20.) The ALJ therefore discharged his duty under the first step of the *Craig* analysis. Second, at step-two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*) The ALJ then addressed, among other things, Plaintiff's allegations of chronic effects of degenerative disc disease, symptoms of diabetes and leg neuropathy, chronic symptoms of depression, allegations of debilitating symptoms due to fibromyalgia, enthesopathy, and rheumatoid arthritis, allegations of symptoms from cervical disc disease, and allegations of symptoms due to muscle spasms and neuropathy. (Tr. 20-22.) Plaintiff's vague and conclusory contention that the ALJ "failed to make a proper credibility finding concerning Plaintiff's testimony" is without merit.[9] (Docket Entry 9 at 11.)

Plaintiff's arguments to the contrary are not persuasive. The only *specific* contention of an error in the credibility analysis that Plaintiff asserts is that the ALJ failed to properly characterize "the degree and duration of improvement in symptoms provided by Plaquenil."

---

[9] The undersigned also agrees that the Commissioner's detailed response to this vague and conclusory argument pointed to additional substantial evidence in support of the ALJ's credibility analysis. (Docket Entry 13 at 17-19.)

19

(Docket Entry 9 at 11.)

Nevertheless, the ALJ accurately characterized Plaintiff's response to Plaquenil. As the ALJ noted, Plaintiff repeatedly noted improvement on Plaquenil. (Tr. 21, 496, 590-91.) The ALJ additionally accurately noted that Dr. Crummett's examinations in October 2012 and January 2013 were negative for arthralgias, muscle weakness, myalgias, and neck pain. (Tr. 21, 633, 637.) Plaintiff does not explain why or how she believes the ALJ mischaracterized her response to Plaquenil and the record reflects no such mischaracterization. Accordingly, the ALJ provided ample support for his finding that Plaintiff's subjective complaints of disabling symptoms were less than fully credible and his credibility finding should be affirmed.

## Conclusion

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 8) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **GRANTED** and the final decision of the Commissioner be upheld.

_____
Joe L. Webster

April 26, 2017